IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Theresa Louise Passineau, | NO. C 07-05681 JW |
| Plaintiff, <br> v. <br> Monterey County Department of Social and Employment Services, et al., <br> Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' VARIOUS MOTIONS TO DISMISS** |

## I. INTRODUCTION

Theresa Louise Passineau ("Plaintiff") brings this action against various departments and employees of Monterey County and Santa Cruz County (collectively, "Defendants"), alleging, *inter alia*, that Defendants violated her constitutional rights pursuant to 42 U.S.C. § 1983 when they removed her children from her custody.

Presently before the Court are Defendants' various Motions to Dismiss. The Court conducted a hearing on March 17, 2008. Based on the papers submitted to date and oral arguments of counsel, the Court GRANTS in part and DENIES in part Defendants' motions.

## II. BACKGROUND

In a Complaint filed on November 8, 2007,[1] Plaintiff alleges as follows:

Plaintiff is an individual residing in Monterey County, California. (Complaint ¶ 4.)

Defendants Monterey County Department of Social and Employment Services ("Monterey

---

[1] (Complaint for Damages, hereafter, "Complaint," Docket Item No. 1.)

Social Services") and the Monterey County Sheriff's Department ("Monterey Sheriff's Dept.") (collectively, "Monterey County") are both departments within Monterey County. (Id. ¶¶ 5, 7.) Defendants Steve Mudd ("Mudd") and Pat Mannion ("Mannion") are employees of Monterey Social Services. (Id. ¶¶ 6, 10, 16.) Defendant D. Foster ("Foster") is an employee of the Monterey Sheriff's Department. (Id. ¶ 8.) Santa Cruz County Human Resources Agency and Family and Children's Services ("Santa Cruz County") and Sylvia Hernandez ("Hernandez"), an employee of Santa Cruz County, are also named as Defendants. (Id. ¶ 19.)

Plaintiff is married to Brett Passineau with whom she shares joint legal custody of six children.[2] (Id. ¶ 4.) Four of Plaintiff's children are female and two are male. (Id. ¶ 10.)

On July 6, 2005 at around 6:30 p.m., Mudd and Foster conducted an unannounced search of Plaintiff's residence. (Id. ¶ 10.) While Mudd and Foster had time to obtain a warrant, they conducted the search without consent or a warrant. (Id. ¶ 13.) Plaintiff's female children were present during the search and were taken. (Id. ¶ 10.) The children were not in danger of imminent bodily injury nor other perceived harm. (Id. ¶¶ 11, 14.) Plaintiff was told her children were taken based on allegations that Plaintiff's husband sexually abused the male children. (Id.) However, the male children were not present at the time of the incident. (Id.)

The children were detained by Mudd and Foster for later dependency proceedings. (Id. ¶ 12.) An initial hearing in Juvenile Court was scheduled for July 11, 2005, but was continued to July 15, 2005. (Id. ¶ 17.) Monterey Social Services delegated most of the investigation for the dependency proceeding to Santa Cruz County. (Id. ¶ 16.)

The social workers that investigated the case faulted Plaintiff for not believing the allegations of abuse made by her male children and repeatedly advised her that she would

---

[2] It is unclear from the Complaint whether these children are Plaintiff's foster children or her own children. However, the Complaint references that on the day in question, the two boys "were out of town visiting a former foster mother . . . ." (Complaint ¶¶ 10-15.)

2

never be reunited with her children unless she left her husband. (Id.) Based on this investigation, the Superior Court of Monterey County terminated Plaintiff's parental rights as to all the children. (Id. ¶ 19.)

Plaintiff seeks relief for pain, suffering, and severe emotional distress. (Id. ¶ 21.) In addition, Plaintiff seeks loss of income, attorney fees, and punitive damages. (Id. ¶¶ 23-24.)

On the basis of the allegations outlined above, Plaintiff alleges three causes of action: (1) Violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Mudd and Foster; (2) Violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Mannion and Hernandez; and (3) Violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Monterey County and Santa Cruz County under Monell.[3]

Presently before the Court are the following motions filed by Defendants:

(1) Monterey County Defendants Steve Mudd, Pat Mannion and D. Foster's Motion to Dismiss Complaint and Motion for a More Definite Statement, (hereafter, "Monterey Motion," Docket Item No. 21); and

(2) Santa Cruz County Defendants' Motion to Dismiss Complaint and Motion for a More Definite Statement, (hereafter, "SC Motion," Docket Item No. 7).

## III. STANDARDS

**A.  Lack of Subject Matter Jurisdiction**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a motion to dismiss for lack of subject-matter jurisdiction. A 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). On a facial challenge, all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. See Wolfe, 392 F.3d at 362; Thornhill Publishing Co. v. General Telephone Electronics, 594 F.2d 730, 733 (9th Cir. 1979). When a defendant makes a factual challenge "by presenting affidavits or other

---

[3] Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).

3

evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). The court need not presume the truthfulness of the plaintiff's allegations under a factual attack. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). However, in the absence of a full-fledged evidentiary hearing, disputes in the facts pertinent to subject matter are viewed in the light most favorable to the opposing party. Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996). The disputed facts related to subject-matter jurisdiction should be treated in the same way as one would adjudicate a motion for summary judgment. Id.

**B.     Failure to State a Claim**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. __ , 127 S. Ct. 1955, 1974 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

4

## IV. DISCUSSION

Defendants move to dismiss on the grounds that the Court lacks subject matter jurisdiction over this case and that Plaintiff has failed to state a claim upon which relief may be granted. (Monterey Motion at 4-11; SC Motion at 4-8.) The Court proceeds to address each issue in turn.

### A. Subject Matter Jurisdiction

Defendants contend that the Court lacks subject matter jurisdiction because Plaintiff's action is barred under the Rooker-Feldman doctrine.[4]

Under the Rooker-Feldman doctrine, a federal district court has no authority to review the final determinations of a state court in judicial proceedings. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). Instead, the proper court in which to obtain such review is the United States Supreme Court. 28 U.S.C. § 1257; Feldman, 460 U.S. at 476. The Rooker-Feldman doctrine precludes not only review of decisions of the state's highest court, but also those of its lower courts. See Dubinka v. Judges of Superior Court, 23 F.3d 218, 221 (9th Cir. 1994). A challenge under the Rooker-Feldman doctrine is a challenge for lack of subject matter jurisdiction and may be raised at any time by either party or *sua sponte* by the Court. Olson Farms, Inc. v. Barbosa, 134 F.3d 933, 937 (9th Cir. 1998).

As the Ninth Circuit has held:

> The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over any claim that is "inextricable intertwined" with the decision of a state court, even where the party does not directly challenge the merits of the state court's decision but rather brings an indirect challenge based on constitutional principle.

Bianchi v. Rylaarsdam, 334 F.3d 895, 900 n.4 (9th Cir. 2003) (internal citations omitted); see also Ignacio v. Judges of U.S. Court of Appeals, 453 F.3d 1160, 1165-66 (9th Cir. 2006). "The purpose

---

[4] (Monterey Defendants' Supplemental Statement to Defendants' Motion to Dismiss Complaint and Motion for More Definite Statement at 3, hereafter, "Monterey Supp.," Docket Item No. 28.) Plaintiff has objected to Defendants' supplemental statement as untimely. However, since the Rooker-Feldman issue may be raised at any time by either party or *sua sponte* by the Court, the Court OVERRULES the objection and proceeds to consider its jurisdiction under Rooker-Feldman.

of the doctrine is to protect state judgments from collateral federal attack." Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1029 (9th Cir. 2001).

However, Rooker-Feldman only applies when the plaintiff in federal court first alleges a "de-facto appeal" by (1) asserting errors by the state court as an injury and (2) seeking relief from the state court judgment as a remedy. Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004). Only the causes of action constituting the "de-facto appeal" and those causes of action inextricably intertwined with them are barred under Rooker-Feldman. Id.

In this case, Plaintiff alleges that on the basis of an unconstitutional investigation, the state court terminated her parental rights. (Complaint ¶ 19.) Plaintiff does clearly allege that the state court's dependency proceedings terminated her parental rights with regard to all of her children. (Id.) However, the investigation was carried out by the counties and their employees, not by the state court. While Plaintiff's Complaint refers to remarks by the state court judge as setting the tone for the allegedly unconstitutional investigation, it remains unclear whether Plaintiff is implicating errors by the state court itself, which would be required to meet the first prong of the test in Kougasian.

Further, while Plaintiff prays for, *inter alia*, general damages, special damages, attorney fees, and costs, she does not request the return of custody over her children. (Complaint ¶ 9.) Thus, the Court finds Plaintiff does not seek relief from the state court judgment as required by the second prong of the test in Kougasian. Accordingly, the Court finds that this action is not barred by the Rooker-Feldman doctrine.

**B.     Failure to State a Claim**

Defendants contend that Plaintiff's Complaint should be dismissed because it does not allege sufficient facts to state a § 1983 claim upon which relief may be granted. (Monterey Motion at 4; SC Motion at 4.)

The Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While brevity is encouraged, the

6

complaint must say enough to give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Dura Pharmaceuticals, Inc. v. Broundo, 544 U.S. 336, 346 (2005). Dismissal is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### 1. Individual Defendants

In dispute is whether Plaintiff has alleged sufficient facts to support a § 1983 claim as to Defendants Mudd, Foster, Mannion, and Hernandez.

To state a claim under § 1983, Plaintiff must allege facts sufficient to show that a person acting under color of law caused a deprivation of the rights, privileges, or immunities of an individual, which are secured by the Constitution or federal laws of the United States. 42 U.S.C. § 1983. For purposes of §1983, acting under color of law is a "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Monroe v. Pape, 365 U.S. 167, 184 (1961). It is well established that the Fourteenth Amendment guarantees parents' constitutionally protected rights to the care and custody of their children and that parents cannot be deprived of these rights without notice and a hearing, unless the children are in imminent danger. Stanley v. Illinois, 405 U.S. 645, 651 (1972); Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir. 1991).

With respect to Defendants Mudd and Foster, Plaintiff alleges:

> Mudd is a social worker for the County of Monterey Social Services and Foster is a Deputy for the Monterey Sheriff's Department. (Complaint ¶¶ 6, 8.) Both acted under color of law when Mudd, accompanied by Foster, entered Plaintiff's residence on July 6, 2005, without a warrant or consent and took custody of Plaintiff's children. (Id. ¶ 10.) These actions violated Plaintiff's constitutionally protected right to due process and freedom from interference with parent-child relationships. (Id. ¶ 26.)

These allegations sufficiently state that Mudd and Foster acted in their official capacities as agents of Monterey County when they removed the children from Plaintiff's custody. Thus, Plaintiff has satisfied the first requirement of § 1983 by alleging that Defendants were persons acting under color of state law. Plaintiff's allegation that Foster and Mudd deprived her of due process by failing to provide notice and a hearing before taking custody of the children is sufficient to satisfy the second

7

requirement of a § 1983 action because it states that there was a constitutional violation. Accordingly, the Court finds that Plaintiff states a claim as to Defendants Mudd and Foster.

With respect to Defendants Mannion and Hernandez, Plaintiff alleges:

> Mannion is a social worker employed by Monterey Social Services, and Hernandez is a social worker for Santa Cruz County.[5] (Id.) Monterey Social Services and Santa Cruz County jointly conducted an investigation that was biased and indifferent to Plaintiff's constitutional rights, which ended in the termination of Plaintiff's parental rights. (Id. ¶ 16.) Mannion and Hernandez acted under color of state law to deprive Plaintiff of her constitutionally protected rights. (Id. ¶ 29.)

These allegations identify Mannion and Hernandez as persons working in their official capacities for Monterey Social Services and Santa Cruz County, respectively. Thus, Plaintiff has satisfied the first requirement for stating a § 1983 claim by alleging that Defendants are persons who acted under color of state law. Plaintiff also alleges that Monterey and Santa Cruz Counties conducted a joint departmental investigation on behalf of Monterey County. Given that Mannion and Hernandez are members of these departments, it can be reasonably inferred from the Complaint that they participated in the allegedly unconstitutional investigation leading to the termination of Plaintiff's parental rights. Accordingly, the Court finds that Plaintiff states a claim as to Defendants Mannion and Hernandez.

### 2. Defendants Monterey County and Santa Cruz County

In dispute is whether Plaintiff has alleged sufficient facts to support a § 1983 claim as to Defendants Monterey County and Santa Cruz County.

A public entity defendant cannot be held liable for a § 1983 violation caused by an individual employee's actions under a theory of respondeat superior. Monell, 436 U.S. at 694 (1978). To be liable, the defendant must act as a "lawmaker[ ] or ... [one] whose edicts may fairly be said to represent official policy." Id. at 691. Under Monell, municipal liability must be based upon enforcement of a municipal policy or custom that causes the deprivation of a plaintiff's

---

[5] In the caption of the Complaint, Plaintiff identifies Pat Mannion as a Monterey County social worker and Sylvia Hernandez as a Santa Cruz social worker. This allegation is uncontested by Defendants.

8

constitutional right, and not upon the municipality's mere employment of a constitutional tortfeasor. Id. To maintain a § 1983 claim against a public entity defendant or a supervisor not personally involved in the alleged violation, a plaintiff must allege that his or her constitutional injury resulted from a policy, practice or custom of the local entity. Id. "While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights." Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994). Thus, municipal defendants cannot be held liable when no constitutional violation has occurred. Id.

To prevail on a § 1983 complaint against a local government under Monell, a plaintiff must satisfy a three-part test: (1) an official violated the plaintiff's constitutional rights; (2) the violation is a part of policy or custom and may not be an isolated incident; and (3) there is a nexus between the specific policy or custom to the plaintiff's injury. See Monell, 436 U.S. at 690-92. There are three ways to prove a policy or custom of a municipality:

(1) By showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity;
(2) By showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or
(3) By showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005); Hopper v. City of Pasco, 241 F.3d 1067, 1083 (9th Cir. 2001).

An unconstitutional policy need not be formal or written to create municipal liability under § 1983; however, it must be so permanent and well settled as to constitute a custom or usage with the force of law. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Furthermore, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker." Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). For example, a municipal policy may be inferred from widespread practices or

9

evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded. Menotti, 409 F.3d at 1147.

With respect to her § 1983 claims against the counties, Plaintiff alleges:

> The seizure of Plaintiff's children constituted part of a pattern and practice of Monterey County to remove children from the custody of their parents without a warrant, without adequate investigation, and without probable cause. (Complaint ¶ 32.)
> After taking custody of the children, Monterey County and Santa Cruz County jointly carried out an eleven month investigation during the dependency proceedings. (Complaint ¶ 16.) With his remarks, the presiding judge in the juvenile dependency proceeding set the tone for the investigation. (Complaint ¶¶ 17-18.) The investigation was carried out with indifference to Plaintiff's constitutional rights. (Id.) Social workers responsible for the investigation repeatedly advised Plaintiff that she could never reunite with her children unless she left her husband and faulted her "progress" for not expressing her belief in the boys' allegations against her husband. (Complaint ¶ 18.)

### a. Monterey County

Based on the allegations above, the Court finds that Plaintiff has sufficiently alleged a Monell claim against the Monterey County. First, Plaintiff alleges that her rights were violated by Monterey County when her children were removed from her custody without a warrant. Second, Plaintiff alleges that the act was "a part of a pattern and practice of Monterey County to remove children from the custody of their parents without warrant."[6] Third, Plaintiff alleges that Defendants' actions were done with "deliberate, reckless, and callous disregard for Plaintiff's rights." Finally, since the Complaint also contains an allegation that Defendants' act of removing children without a warrant was a violation that constituted part of a pattern and practice by Monterey County, it can be reasonably inferred that the policy was the moving force behind the violation. Accordingly, the Court finds that Plaintiff has sufficiently alleged a Monell claim against Monterey County.

---

[6] "In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988); Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir. 1986). Thus, Plaintiff's bare allegation that the actions of the Individual Defendants conformed to official policy suffices to withstand this motion to dismiss.

### b.     Santa Clara County

Based on the allegations above, the Court finds that Plaintiff has failed to alleged a <u>Monell</u> claim against the Santa Clara County. Plaintiff contends that the presiding judge in the dependency proceeding is a decision-making official. (Opposition to Motion to Dismiss of Santa Cruz County Defendants at 7, Docket Item No. 14.) However, the Ninth Circuit has found that a municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal official or lawmaker for purposes of § 1983 liability. <u>Eggar v. City of Livingston</u>, 40 F.3d 312, 315 (9th Cir. 1994) (quoting <u>Johnson v. Moore</u>, 958 F.2d 92, 94 (5th Cir. 1992)). Thus, the judge was not the final policy-making authority for Santa Cruz County. Accordingly, the Court finds that the Complaint fails to state a claim against Santa Cruz County. The Court dismisses Plaintiff's <u>Monell</u> claim against the Santa Cruz County with leave to amend.

### C.     **Absolute Immunity**

Defendants contend that Mudd and Mannion should be dismissed because they are entitled to absolute immunity for performing quasi-prosecutorial functions.[7] (Monterey Motion at 8-10.)

Absolute immunity protects its holders from needing to answer for their conduct in a civil damages action. <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 525 (1985). A court may grant absolute immunity on a Rule 12(b)(6) motion when it is apparent from the face of the complaint that absolute immunity applies. <u>See</u> <u>Arizona Minority Coalition for Fair Redistricting v. Arizona</u>, 366 F. Supp. 2d 887 (2005). However, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." <u>Antoine v. Byers & Anderson, Inc.</u>, 508 U.S. 429, 433 n.4 (1993) (quoting <u>Burns v. Reed</u>, 500 U.S. 478, 486-87 (1991)).

The Ninth Circuit has held that social workers enjoy absolute immunity when they perform "quasi-judicial" actions or when they perform "quasi-prosecutorial" actions. <u>See</u> <u>Meyers v. Contra Costa County Dep't of Social Services</u>, 812 F.2d 1154, 1156-57 (9th Cir. 1987). The initiation and pursuit of child dependency proceedings are protected by quasi-prosecutorial immunity. <u>Id.</u> at 1157.

---

[7] Defendants have not contended that Mudd and Mannion are entitled to qualified immunity.

11

However, quasi-prosecutorial immunity does not apply to actions taken unilaterally prior to the operation of the judicial process and not for preparation or for presentation to a court. Id. Quasi-judicial immunity is available when a social worker acts in a capacity functionally comparable to that of a judge, such as when exercising discretionary judgment. Antoine, 508 U.S. at 436 (quoting Imbler v. Pachtman, 424 U.S. 409, 423 n.20).

In this case, Plaintiff alleges:

> On July 6, 2005, Mudd and Foster entered Plaintiff's residence without her consent or a warrant. (Complaint ¶ 10.) Mudd and Foster then detained her children before the filing of a dependency petition. (Complaint ¶ 12.) At the time, the children taken were not in danger of imminent bodily injury. (Complaint ¶ 11.)

The alleged investigatory actions taken by Mudd and Mannion during, and in preparation for, the Juvenile Court proceedings were initiated and pursued as part of a child dependency process and are therefore quasi-prosecutorial in nature. Those proceedings began on July 11, 2005. Thus, the Court finds that Mudd and Mannion are entitled to absolute immunity for actions from July 11, 2005 onward.[8]

However, the taking of the children on July 6, 2005 may have occurred outside the context of any judicial or dependency proceeding and therefore may not have been quasi-prosecutorial in nature. Since the Complaint alleges that Mudd participated in the taking of the children on July 6, 2005, but not that he was exercising his discretionary judgment, it remains unclear whether Mudd's conduct before the July 11, 2005 hearing was quasi-judicial in nature.

Plaintiff does not allege that Mannion was involved in the taking of the children on July 6, 2007. Thus, the Court finds that Plaintiff has insufficiently alleged conduct on the part of Mannion before July 11, 2005 for which he would require immunity. Should Plaintiff properly allege these facts, the Court may revisit the issue of absolute immunity as to Mannion.

---

[8] Investigatory actions taken by Hernandez related to the Juvenile Court proceedings may also qualify as quasi-prosecutorial acts for which she would receive absolute immunity. However, Defendants have yet to move the Court to dismiss the claims against her under such a theory.

12

Under the facts as currently alleged, Mudd would receive absolute immunity for his conduct after July 11, 2005 and Mannion would receive absolute immunity for all of his conduct. Accordingly, the Court dismisses all claims against Defendant Mannion on absolute immunity grounds, but declines to dismiss Defendant Mudd at this time.

**D.    Qualified Immunity**

Defendants contend that Foster is entitled to qualified immunity because Plaintiff has not sufficiently alleged wrongdoing by Foster in the Complaint. (Motion at 9-10.)

Qualified immunity is a defense against liability available to government officials who perform executive and administrative functions and who are sued for monetary relief in their personal capacities. Mitchell, 472 U.S. at 526. The doctrine shields public officers from "undue interference with their duties and potentially disabling threats of liability." Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982); Brosseau v. Haugen, 543 U.S. 194 (2004). To determine whether a public official is entitled to qualified immunity from § 1983 liability, a court must consider (1) whether the plaintiff has identified a specific federal law or constitutional right that allegedly has been violated; (2) whether that right was so clearly established as to alert a reasonable official to its parameters; and (3) whether a reasonable officer could have believed his or her conduct was lawful. See Sweaney v. Ada County, 119 F.3d 1385, 1388 (9th Cir. 1997) (citing Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996)).

**1.    Whether the Conduct was a Violation of Plaintiff's Constitutional Rights**

In dispute is whether Plaintiff sufficiently alleged facts to support the allegation that Defendant Foster violated Plaintiff's constitutional rights.

As noted above, a parent has a constitutionally protected right to the care and custody of her children that cannot be deprived without notice and a hearing, except when the children are in imminent danger. Caldwell, 928 F.2d at 333. Serious allegations of abuse which are investigated and corroborated give rise to a reasonable inference of imminent danger sufficient to justify taking children into temporary custody. Ram v. Rubin, 118 F.3d 1306, 1311 (9th Cir. 1997); see Baker v. Racansky, 887 F.2d 183 (9th Cir. 1989).

13

In this case, to receive qualified immunity, Foster would need to have believed that the four children removed from custody were in immediate danger of abuse or that the environment they were in posed an immediate threat to their safety. The only basis for this belief stated in the Complaint is the third-party allegation of sexual abuse regarding Plaintiff's male children. Plaintiff alleges:

> Mudd and Foster removed the children from Plaintiff's custody without notice or a hearing. (Complaint ¶ 10.) Mudd and Foster acted on a third-party allegation pertaining to the sexual abuse of the two boys by Plaintiff's husband. (Id.) Initially, they took custody of the four female children. (Id.) However, the allegation did not refer to the four girls and provided no basis to believe that the girls were in any danger. (Id.) Moreover, the two boys were out of town visiting a former foster mother at the time. (Id. ¶¶ 10-15.)

Absent from the allegations above or any where else in the Complaint is an allegation regarding whether Foster further investigated or attempted to corroborate the third-party report of possible child sexual abuse of the boys. Therefore, the Complaint does not state facts that would provide a legal basis for Foster's action to remove the children. Accordingly, the Court finds that the Complaint sufficiently alleges a violation of Plaintiff's constitutional right to custody of her children.

### 2. Whether Plaintiff's Right was Clearly Established

The Court considers whether Plaintiff's right is so clearly established that a reasonable officer would be on notice that deprivation of that right would be a violation.

Officers are entitled to qualified immunity if the unconstitutionality of their conduct was not clearly established at the time of the incident. Newell, 79 F.3d at 117. To be clearly established for qualified immunity purposes, the contours of the asserted right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Camarillo v. McCarthy, 998 F.2d 638, 640 (9th Cir. 1993). In making this determination, the court applies an "objective but fact-specific inquiry." Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007).

Preexisting law clearly requires that, absent some exception, social workers and officers must provide parents with notice and a hearing before they interfere with the parents' custodial rights regarding their children. See Santosky v. Kramer, 455 U.S. 745, 770 (1982). One exception

14

is that notice and a hearing are unnecessary when children are imminent danger of harm.[9] Thus, a reasonable officer would be on notice that it is a violation of a parent's constitutionally protected rights to take the parent's children into custody without notice and a hearing unless there was imminent danger to the children.

Accordingly, the Court finds it was clearly established that taking Plaintiff's children under the facts alleged in the Complaint, may be a violation of Plaintiff's constitutional right to care and custody of her children.

### 3. Whether a Reasonable Officer would have Believed the Conduct was Lawful

The Court considers whether Defendant Foster's actions were reasonable.

Qualified immunity is appropriate if a reasonable officer could have believed that the conduct in question was lawful. Alexander v. City and County of San Francisco, 29 F.3d 1355, 1363-64 (9th Cir. 2004)

As noted above, the Complaint alleges that the children were not in immediate danger and there was no investigation or corroboration upon which Foster could verify that the children were in imminent danger. Absent a corroborated belief that the children were in imminent danger, a reasonable officer in Foster's situation would understand that there is no exception to providing notice and a hearing before taking custody of children.

In sum, the Court DENIES Defendants' motion to dismiss Defendant Foster on qualified immunity grounds at this time.

//

---

[9] California establishes a similar standard by statute. Under California Welfare and Institutions Code section 306, a county welfare department may take into and maintain temporary custody of, without warrant, a minor who has been declared a dependant child of the juvenile court under Section 300 or who the social worker has reasonable cause to believe is a person described in subdivision (b) or (g) of Section 300, and the social worker has reasonable cause to believe that the minor has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety. Cal. Welf. & Inst. Code § 306.

**E.    More Definite Statement**

Defendants contend that the Court should require Plaintiff to file a more definite statement because Plaintiff has failed to state a claim against all Defendants. (Monterey Motion at 10; SC Motion at 9.)

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. Fed. R. Civ. P. 12(e). A motion for more definite statement, like a motion to dismiss for failure to state a claim, is viewed with disfavor and is rarely granted. Cellars v. Pacific Coast Packaging. Inc., 189 F.R.D. 575, 578 (N.D. Cal. 1999). "[T]he proper test in evaluating a motion under Rule 12(e) is whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings." Federal Sav. and Loan Ins. Corp. v. Musacchio, 695 F.Supp. 1053, 1060 (N.D. Cal. 1988) (citing Famolare Inc. v. Edison Bros. Stores, Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981)).

Since the Court finds that Plaintiff has failed to state a claim with respect to Defendants Santa Cruz County and Mannion, the Court grants Plaintiff leave to amend the Complaint and denies Defendants' motions for a more definite statement as moot.

### V.  CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motions to Dismiss with leave to amend. Plaintiff shall file an Amended Complaint within fifteen (15) days of the date of this Order. The Court sets a Case Management Conference for **July 7, 2008 at 10 a.m.** On or before **June 27, 2008**, the parties shall meet and confer and file a Joint Case Management Statement which outlines a clear schedule for discovery, including a proposed date for close of all discovery.

Dated:  May 22, 2008

JAMES WARE
United States District Judge

**United States District Court**
For the Northern District of California

1 **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2 Irven Grant granti@co.monterey.ca.us
Jerome Pierce Mullins alawyer@silicon-valley.com
3 Jessica Claudine Espinoza jessica.espinoza@co.santa-cruz.ca.us

4
**Dated: May 22, 2008**                                        **Richard W. Wieking, Clerk**
5

6                                                              **By:   /s/ JW Chambers
                                                                  Elizabeth Garcia
7                                                                 Courtroom Deputy**